UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TIMOTHY AND BRENDA PARENT,

      Plaintiff,

v.                                          Case No. 09-C-951

CITIBANK (SOUTH DAKOTA) N.A.
and HOME DEPOT, U.S.A., INC.,

      Defendant.

---

**DECISION AND ORDER**

---

Plaintiffs Timothy and Brenda M. Parent filed this action in state court on August 11, 2009. Asserting diversity jurisdiction under 28 U.S.C. § 1332, Defendants Citibank and Home Depot removed the case to federal court. In an amended complaint filed thereafter, Plaintiffs assert no fewer than ten claims against Defendants Citibank and Home Depot, all of which arise out of a credit transaction valued at less than $10,000.[1] They allege violations of the Wisconsin Consumer Act, identity theft, misrepresentation and breach of contract. This case is presently before the Court on Defendants' motion to dismiss nine of the ten claims brought against them.

---

[1] This Court has diversity jurisdiction over the case, which was removed from state court. Plaintiffs and Defendants are residents of different states, and even though the underlying credit dispute involves less than $10,000, Plaintiffs are seeking punitive damages that could well exceed the jurisdictional threshold of $75,000. *See LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 551 (7th Cir.2008) ("If punitive damages are available, subject matter jurisdiction exists unless it is 'legally certain' that the plaintiff will be unable to recover the requisite jurisdictional amount.").

**I. Background**

The Plaintiffs, Timothy and Brenda Parent, are married adult residents of Wisconsin. (Compl. ¶1). Between April 2002 and March 2007 Plaintiff Timothy Parent was the owner of a limited liability company that did business under the name Crivitz Log Cabins ("CLC"). CLC was a routine customer of Home Depot, where CLC purchased building materials, including log cabin packages, to build log cabins for CLC's customers. Plaintiffs also intended to make purchases from Home Depot for personal, family and household purposes, and on August 26, 2002, separately applied for a Home Depot credit card account ("Account #1") to acquire credit for purchasing products at Home Depot. Plaintiffs' application was approved, and a Home Depot credit card was issued in the name of Plaintiffs Timothy Parent and Brenda M. Parent individually by Citibank.

In April 2005, Dr. Lee Krahenbuhl contracted with CLC to build a log cabin for speculative re-sale in Crivitz, Wisconsin. Neither Plaintiff was a named party to this agreement (Compl. ¶9). Pursuant to that agreement, CLC was to provide the general contracting and labor, and Krahenbuhl was to provide the building supplies, including a log cabin package ("Package #1) from Home Depot. In other words, Krahenbuhl would buy the kit and CLC would put it together. In order to purchase Package #1, Krahenbuhl applied for and received a credit card from Home Depot, on which he ordered Package #1 for $9,761.64. Krahenbuhl authorized the payment of Package #1; he also authorized an unrelated purchase of $29.96. (Compl. ¶¶17, 23). CLC built the cabin pursuant to its agreement with Krahenbuhl. (Compl. ¶22).

However, a dispute arose between Krahenbuhl and CLC during the summer of 2005 regarding the log cabin construction, which led Krahenbuhl to call both Home Depot and Citibank to direct employees at both locations to remove the charges for Package #1 and the $29.96 from his

2

own account and move them to the Plaintiffs' Account #1. (Compl. ¶¶29, 30). In response to Krahenbuhl's request, a Home Depot employee sent a fax to Citibank which caused the above amounts to be switched from Krahenbuhl's account to the Plaintiff's Account #1 without Plaintiffs' approval or knowledge. (Compl. ¶¶31, 37).

Later, CLC ordered another log cabin package ("Package #2") on November 7, 2005 from Home Depot in connection with a different job. (Compl. ¶38). CLC was offered free financing for 18 months, yet it never took delivery of Package #2 and attempted to cancel the order in February, 2007. (Compl. ¶¶38, 48, 49). However, a Home Depot employee had already cancelled Package #2 without Plaintiff's knowledge or consent. (Compl. ¶40).

Plaintiffs, meanwhile, received their billing statement for their Account #1 for transactions closed through October 13, 2005. (Compl. ¶43). This statement showed a "Misapplied Sale" of $29.96, which was actually Krahenbuhl's transaction that Citibank had moved onto the Plaintiff's Account. On Plaintiffs' next billing statement, there was another "Misapplied Sale" in the amount of $9,761.64, which reflected Citibank's transfer of Krahenbuhl's purchase of Package #1 onto the Plaintiffs' Account #1. (Compl. ¶45). After becoming aware of both charges, Plaintiffs contacted Home Depot for an explanation, but they allege they received no information about the first "Misapplied Sale" and were told that the second "Misapplied Sale" was actually Package #2, which had been cancelled. (Compl. ¶¶44, 46). It was not until February 2007 that Plaintiffs learned that the "Misapplied Sale" was actually for Package #1 – the kit Krahenbuhl had purchased – and that Home Depot expected them to pay for it. (Compl. ¶49).

Plaintiffs, as well as Plaintiff's counsel, communicated with both Home Depot and Citibank between February 2007 and March 2009 requesting Defendants to remove the two unauthorized

3

"Misapplied Sales" charges from Plaintiffs' Accounts. (Compl. ¶¶ 62, 63, 64). Neither Defendant has taken any action to remove these charges. (Compl. ¶¶ 67, 68).

**II. Analysis**

A motion to dismiss for failure to state a claim tests the complaint's legal sufficiency. Fed. R. Civ. P. 12(b)(6). When a claim fails to state grounds upon which relief can be granted, it should be dismissed. *Id.* When deciding a motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded facts in the complaint. *Pugh v. Tribune Co.,* 521 F.3d 686, 693 (7th Cir. 2008). All facts in the complaint are presumed true until proven otherwise; the complaint must simply state a plausible claim recognized by the law. *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009).

### A. Wisconsin Consumer Act Claims

The focus of the motions to dismiss is the Wisconsin Consumer Act. The Wisconsin Consumer Act "is an exercise of the state's police power." *Walser Leasing, Inc. v. Simonson,* 120 Wis.2d 458, 461, 355 N.W.2d 545, 547 (Wis. Ct. App. 1984). The Act provides that "Chapters 421 to 427 of the WCA shall be liberally construed and applied to promote" the underlying purpose of the statute, including "to protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants." Wis. Stat. § 421.102(1)-(2)(b). Furthermore, this statute is intended to "permit and encourage the development of fair and economically sound consumer practices in consumer transactions." Wis. Stat. § 421.102(2)(c). All agreements that fall within Chapters 421 to 427 of the WCA "impose an obligation of good faith in its performance or enforcement. 'Good faith' means honesty in fact in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing." Wis. Stat. § 421.108.

4

The WCA applies to "consumer transactions" or "consumer credit transactions." Wis. Stat. § 421.201(1). A consumer transaction is "a transaction in which one or more of the parties is a customer for purposes of the transaction." Wis. Stat. § 421.310(13.) A consumer credit transaction is a consumer transaction between a merchant and a customer in which property, services, or money is obtained on credit and the customer is obligated to pay in installments. Wis. Stat. § 421.301(10). A merchant is defined in the WCA as "a person who regularly advertises, distributes, offers, supplies or deals in real or personal property, services, money or credit in a manner which directly or indirectly results in or is intended or designed to result in, lead to or induce a consumer transaction." Wis. Stat. 421.301(25). A customer is defined as a person other than an organization who seeks property, services, or money for "personal, family or household purposes" and a transaction is "an agreement between 2 or more persons, whether or not the agreement is a contract enforceable by action, and includes the making of and the performance pursuant to that agreement." Wis. Stat. § 421.301(17); Wis. Stat. § 421.301(44).

Applicability of the WCA depends on whether there is a transaction that brings the matter within the WCA. To constitute a "consumer transaction," one of the parties must be a customer for the purposes of that particular transaction. Wis. Stat. § 421.301(13). An individual can be a customer for one transaction between two parties, yet not for another transaction between the parties, based upon the underlying purpose and nature of the transaction at hand. *Matter of Ingersoll,* 8 B.R. 912 (Bk. Wis. 1981). Therefore, whether the WCA applies or not depends on the "amount and purpose" of each loan. *Id.* at 917.

The parties' central dispute is whether the transaction at issue was a consumer transaction (*i.e.,* one for "personal, family or household purposes") or a business transaction. The Defendants

5

note that the log cabin kit was purchased with the intent of reselling it on spec, which means the home was more in the nature of an investment than a dwelling. And it was not just a personal investment, like buying a stock or gold, it was CLC's business to build log homes using Home Depot's log cabin kits. No one disputes that, absent CLC, there would have been no purchase of the kit in the first place.

But Plaintiffs argue that Defendants' focus is too narrow. First of all, there was no transaction at all with respect to the "business" dispute at issue here. To the extent the log cabin purchase was a business (non-consumer) transaction, that is only true as between Krahenbuhl and Home Depot. Plaintiffs were not a party to that transaction, and in fact that is the substance of their complaint: Home Depot transferred that debt to their personal (consumer) account without their consent. Because the Parents were not involved in a transaction with respect to the log cabin kit purchase (a transaction being defined as "an agreement between 2 or more persons, whether or not the agreement is a contract enforceable by action, and includes the making of and the performance pursuant to that agreement"), the fact that the cabin kit may have had a business (non-personal) purpose is of no moment. Wis. Stat. § 421.301(44). The Plaintiffs were simply not involved in that transaction.

Instead, the "consumer transaction" at issue here consists of Defendants' performance pursuant to the agreement under which Citibank agreed to extend Plaintiffs credit for purchases made from Home Depot. To repeat, the WCA applies to "consumer transactions." Wis. Stat. § 201(1). A "consumer transaction" is defined as "a transaction in which one or more of the parties is a customer for purposes of that transaction." Wis. Stat. § 421.301(13). A "customer" is defined as "a person . . . who seeks or acquires real or personal property, services, money or *credit* for

6

personal, family or household purposes . . ." Wis. Stat. § 421.301(17) (italics added). And the term transaction includes "an agreement between two or more persons . . . and includes the making of and *performance of* that agreement." Wis. Stat. § 421.310(44) (italics added). Based on their allegation that the credit card they applied for was "intended to be used for personal, family, and household purposes" (Compl. ¶ 6), Plaintiffs are presumed at this point in the proceedings to be "customers" for purposes of the credit agreement.[2] By applying for and receiving a Home Depot credit card, they acquired credit for personal, family or household purposes. The fact that the specific charge at issue may have had a non-personal purpose does not matter because the Parents were not party to that transaction. They *were* party to the transaction that occurred when the Defendants allegedly transferred the charge that arose out of Krahenbuhl's purchase to their account without their consent and then demanded payment pursuant to the credit agreement. Accordingly, the fact that the cabin purchase may have had a non-household purpose does not mean the Plaintiffs were not party to a consumer transaction that (allegedly) ran afoul of the WCA.

Defendants also argue that the statute of limitations bars the WCA claims. The WCA statute of limitations reads as follows:

> Any action brought by a customer to enforce rights pursuant to chs. 421 to 427 shall be commenced within one year after the date of the last violation of chs. 421 to 427, 2 years after consummation of the agreement or one year after last payment, whichever is later, except with respect to transactions pursuant to open-end credit plans which shall be commenced within 2 years after the date of the last violation;

---

[2] The Wisconsin Administrative Code provides: "A person seeks or acquires real or personal property, services, money or credit for personal, family, household or agricultural purposes within the meaning of s. 421.301 (17), Stats., when such real or personal property, services, money or credit is to be used primarily, that is 50% or more, for one or more of these purposes." Wis. Adm. Code § DFI-WCA 1.06.

7

> but no action may be commenced more than 6 years after the date of the last violation.

Wis. Stat. § 425.307(1).

Plaintiffs argue that although the credit cards were obtained in 2002 and the log cabin kits were purchased in 2005 (four years before the case was filed), the Defendants are still charging monthly interest and maintaining the Plaintiffs' balance. Each month thus represents a new and ongoing violation, which renews the limitations period. Under the statute, an action to enforce rights must be brought "within 2 years after the date of the last violation," and that is exactly what they have done.

The question is: what is the last "violation" of the WCA? Plaintiffs allege that it is the charging of interest, the Defendants' failure to investigate or answer Plaintiffs' inquiries, and their refusal to remove the charges from their account. All of these events allegedly happened (or continued) within the last two years. Assuming Plaintiffs' allegations are true, it seems clear that claim one, as alleged in the amended complaint, states a violation that has occurred recently. The claim states that the Defendants have violated Wis. Stat. § 427.104(j), which prohibits a debt collector from "claim[ing] or attempt[ing] or threaten to enforce a right with knowledge or reason to know that the right does not exist." Each credit card statement or refusal to remove the charges would constitute an assertion by the Defendants that would arguably be a "claim" to "enforce a right with knowledge . . . that the right does not exist." *Id.; Kett v. Community Credit Plan, Inc.,* 228 Wis.2d 1, 24, 596 N.W.2d 786, 797 (Wis. 1999). The simple fact is that this is not a stale credit dispute over money that was paid five years ago; it is a live dispute over an ongoing debt that is

8

continuing to accrue interest. Because the action was commenced "within 2 years after the date of the last violation," Wis. Stat. § 425.307(1), it is timely.

Finally, the Defendants argue that the WCA claims are preempted by the federal Fair Credit Reporting Act. That Act preempts claims based on the activities of furnishers of credit information. "The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting." *Jaramillo v. Experian Info. Solutions, Inc.,* 155 F. Supp.2d 356, 362 (E. D. Pa. 2001). Under the statute, no "requirement or prohibition" under state law can be imposed regarding the subject matter regulated under 15 U.S.C. § 1681s-2, which relates to "the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681s-2 reads, in part: "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."

Although claims one and three do not seem to involve credit reporting at all, claim two of the amended complaint alleges a violation of Wis. Stat. § 427.104(1)(c), which prohibits "Disclos[ing] or threaten[ing] to disclose information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false." The claim is thus founded on the allegation that the Defendants have disclosed (or threatened to disclose) the Plaintiff's alleged debt to adversely affect their reputation and creditworthiness. This is tantamount to the prohibition set forth in 15 U.S.C. § 1681s-2. No matter how the Plaintiffs style the claim, it is an allegation that the Defendants reported false information about Plaintiffs' credit. That is preempted by the FCRA.

9

Even the case cited by Plaintiffs supports dismissal of claim two on preemption grounds. In *Hukic v. Aurora Loan Services, Inc.,* the plaintiff brought claims under the FCRA as well as a state law claim for tortious interference with economic advantage. 2007 WL 2563363 (N. D. Ill. 2007). The district court concluded that his state law claim relied on his allegations that the defendant had made inaccurate reports about his credit.

> [Plaintiff] alleges that Defendants knowingly reported false information regarding the status of Hukic's account to credit reporting agencies-conduct regulated by § 1681s-2(a). . . . Similarly, Defendants' conduct following Hukic's notice to Trans Union that he disputed the accuracy of the status of his account is regulated by § 1681s-2(B). Hukic's Amended Complaint does not allege conduct on behalf of Defendants unrelated to their duties as furnishers of information such as issuing loans or opening accounts. Accordingly, Hukic's allegations associated with his tortious interference claims and the evidence Hukic proffered in support of those claims relate to Defendants' intentional and unjustified reports to credit agencies that interfered with Hukic's prospective third-party relationships with prospective lenders. Defendants' conduct falls under the scope of Sections 1681s-2(a) and (b), and therefore, Hukic's claims against Defendants for tortious interference of prospective economic advantage are preempted by § 1681t(b)(1)(F).

*Hukic v. Aurora Loan Services, Inc.,* 2007 WL 2563363, *11 (citations omitted).

Because claim two relies on Plaintiffs allegations that the Defendants reported his debts knowing that he did not owe them such debts, the claim is preempted and will be dismissed.

**B. Misrepresentation Causes of Action (Claims seven, eight, nine and ten)**

The amended complaint also alleges that the Defendants engaged in misrepresentations of fact.[3] Claims seven through nine are styled as negligent, intentional and "strict liability" misrepresentation, but the substance of the allegations is the same: Home Depot represented that

---

[3]The fourth claim asserted in the amended complaint alleged intentional misrepresentation. "The actions of the defendants as alleged herein were an intentional misrepresentation of the facts of the two 'Misapplied Sales' or were otherwise untrue, and . . . the defendants knew that the representations were untrue at the time they were spoken and / or represented." (Am. Compl., ¶ 96.) But this claim is phrased as a violation of the WCA. (Am. Compl. ¶¶ 104-105.)

10

"Cabin Package # 2 was ordered . . . and not cancelled, that the $29.96 sale shown on the October 2005 statement was a 'misapplied' sale properly billed to their account, that the $9,761.64 shown on the November 2005 statement was a 'misapplied' sale properly billed to their account, that the $9,761.64 shown on Exhibit N was for Cabin Package # 2." (Am. Compl. ¶ 117.) Similar allegations are leveled against Citibank. (Am. Compl. ¶ 118.) Claims eight and nine repeat these allegations under theories of intentional misrepresentation and strict liability misrepresentation. Finally, claim ten asserts "strict responsibility misrepresentation" caused by the fact that the Defendants used Plaintiffs' personal information "to obtain payment from, and interest upon amounts alleged to be owed, the Parents, and to harm the reputation, property and persons of the Parents." (Am. Compl. ¶ 137.) This claim asserts that the Defendants' actions violate Wis. Stat. § 943.201, which makes it a Class H felony to use another person's information without consent to harm that person or obtain credit.

Under any of the three theories of misrepresentation, Plaintiff must demonstrate that Defendants have made: 1) a representation of fact; 2) the representation of fact must be false, and 3) the plaintiff must have believed or have relied on the misrepresentation to his or her determent or damages. *Tietsworth v. Harley-Davidson, Inc.,* 270 Wis.2d 146, 677 N.W.2d 233 rev'd on other grounds, 303 Wis.2d 94, 735 N.W.2d 418. Defendants argue that the misrepresentation claims must be dismissed because Plaintiffs cannot show that they relied on any of the alleged misrepresentations. Most obviously, the Plaintiffs never paid these charges. They have thus not demonstrated that they have been damaged due to the fact that the Defendants described the charges as "Misapplied" on their statements.

11

Plaintiffs protest that they *were* harmed, and they cite paragraph 119 of the amended complaint, which states that "Said representations of fact from Citibank and Home Depot were believed to be true and relied upon by the Parents and such belief was to their detriment in that they did not sooner challenge the charges and did not dispute the charges on their account." (Am. Compl. ¶ 119.) This does not show detrimental reliance. Delay in uncovering the "fraud" is not a detriment in and of itself, because most frauds take time to discover. Plaintiffs still have not paid the charges, and thus there is no causal link between any damages and any delay in their disputing of the charges. Fraud must be pled with particularity, and even after two rounds of briefing the allegations of detrimental reliance are difficult to discern.[4]

Finally, claim ten is captioned "strict responsibility misrepresentation" but it alleges a form of theft. (It is unclear what the claim has to do with misrepresentation at all, but the parties have lumped it in with the other misrepresentation claims.) As noted above, the claim alleges the Defendants caused harm to the reputation, property and "persons" of the Plaintiffs by misappropriating Plaintiffs' credit card information. Plaintiffs rely on Wisconsin's criminal identity theft statute, Wis. Stat. § 943.201, which essentially allows a private right of action through Wis. Stat. § 895.446. The identity theft statute, however, requires that the defendant actually steal the plaintiff's identity: a defendant must use "identifying information or personal identification document of an individual . . . without the authorization or consent of the individual and by representing that he or she is the individual, that he or she is acting with the authorization or consent

---

[4] Although the argument is not raised, it is also difficult to envision a merchant's description of a charge on a statement as a fraudulent misrepresentation of fact. The statements here said the charges were "misapplied," but that is not the same as saying the charges did not need to be paid by the Plaintiffs.

12

of the individual, or that the information or document belongs to him or her." Wis. Stat. § 943.201(2). Nowhere in the amended complaint is there an allegation that Home Depot or Citibank attempted to pass off the Plaintiffs' information as their own or that they were acting on Plaintiffs' behalf. Instead, the allegation is that the Defendants caused Plaintiffs harm by incorrectly billing them for a product they should not have been billed for. This is not identity theft.

### C. Claim Six

Claim six alleges that Home Depot violated Wis. Stat. § 100.195, which prevents sellers from billing consumers for goods the consumer did not authorize. Wis. Stat. § 100.195(2)(a). Again, however, the statute applies to "Consumer goods or services," which means "goods or services that are used or intended for use for personal, family, or household purposes." Wis. Stat. 100.195(1)(c). As described above, the charge here was not related to a personal, family or household purpose – it was a business investment that happened to have been bought on a consumer credit card. Accordingly, claim six will also be dismissed.

### III. Conclusion

The Defendants' motions to dismiss are **GRANTED** in part. All claims are dismissed except for claims one, three and four. The clerk will place this matter on the calendar for an in-person scheduling conference.

**SO ORDERED** this ___11th___ day of June, 2010.

                                                 _s/ William C. Griesbach_
                                                 William C. Griesbach
                                                 United States District Judge